(Superior Court of Cincinnati, Ohio)
General Term.

T. J. & J. J. EMERY v. THE CITY OF CINCINNATI; ELIZABETH KRONE v. SAME; GUSTAVE J. KOCH v. SAME; GEORGE FISHER v. SAME; WM. B. TEASDALE v. SAME.

The act of March 30th, 1893, (90 V. 258, Local Laws) familiarly known in Cincinnati as the "The Alley Law", is applicable only to cities of the first grade and first class, and provides that the Board of Administration in such cities shall have power to improve alleys twenty feet or less in width without the action of council or concurrence of the Board of Legislation.

Said law and other laws applicable to the improvement of alleys in said city, provides that lots abutting upon a street may be assessed according to the abutting feet, whether corner lots or not.

Held, that neither said alley law, or the feature as to the assessment of corner lots, is in contravention of sec. 26, art. 2, of the constitution which requires all laws of a general nature to have a uniform operation throughout the state.

Notice by publication in the making of a street improvement, without personal notice to the property owner to be assessed, is not in violation of sec. 19, act 1 of the constitution, which declares that private property shall ever be held inviolate.

SMITH, J.

These cases have been reserved to General Term, and are brought by persons owning property in the city of Cincinnati, abutting upon certain alleys which have been improved by the Board of Administration of said city under the act of March 30th, 1893, (90 V. 258, Local Laws). The actions seek to enjoin the assessments made by reason of such improvements, upon the ground that the laws under which they were made are unconstitutional and void. The facts in the cases are not disputed, and the questions at issue are raised by demurrers to the petition.

The act of March 30th, 1893, familiarly known as "The Alley Law," authorized the Board of Administration in cities of the first grade of the first class, to improve alleys twenty feet or less in width" without the action or concurrence of council or the Board of Legislation in any of said proceedings," and provided that the cost should be "assessed upon the parcels of lots and lands bounding or abutting upon the improvement in the manner provided by law."

3.—The assessments complained of, are of two kinds: First—Upon lots bounding and abutting upon the alley, but not having their lengthwise side upon the alley. Second,—Upon lots bounding and abutting upon the alley, and are therefore what are known as "corner lots."

It is contended ·by plaintiffs, that these assessments are void because the law or laws under which they are made are unconstitutional, for the following reasons:

First:—That a law, such as this is cannot be valid unless applicable to all the municipalities of the state, because the improvement of alleys is a subject of a general nature, and therefore must have a uniform operation throughout the state. In confining its operation to cities of the first grade and the first class, therefore, the law conflicts with sec. 26, act. 2 of the constitution, and is inoperative and void.

Second :--That even if it be conceded for the sake of argument that such a classification may be upheld so far as the manner of improving alleys is concerned, nevertheless the attempt to provide a different mode of assessment for corner lots from that provided in other municipalities, cannot be upheld, for the reason that the mode of assessment for street improvements is a subject of a general nature, and in obedience to Sec. 26,

art. 2 of the constitution, must be uniform throughout the state.

Third :—That as the law provides for no personal notice, but only notice by publication, it is unconstitutional, as violating the 14th amendment of the Federal constitution, which forbids the taking of property without "due process of law."

Prior to the decision in Hixson v. Burson, 54 Ohio St., 470. in view of the repeated decisions of the Supreme Court sustaining a mode of construction for streets or alleys in cities of the first grade of the first class, different from that provided in other municipalities, no question could have arisen seriously as to whether such a law was unconstitutional, upon the ground that the mode provided was different from that provided for in other municipalities, and therefore was in conflict with sec. 26, act 2 of the constitution. A good illustration of the position, which up to the time of that decision had been taken by the Supreme Court with reference to such legislation, may be found in the decision of the case of Scheer v. The City of Cincinnati, 14 W. L. B·, 87, in which case the General Term of this court sustained the act of April 25th, 1885, (82 Ohio St., 156,) authorizing the improvement by paving with granite blocks, etc., of streets in cities of the first grade of the first class, and the decision was subsequently affirmed by the Supreme Court without report.

Aside therefore, from the question as to the effect of a different rule for the assessment of corner lots in this law, and aside from the question as to the sufficiency of the notice provided for therein, there would be no question as to the constitutionality of the law, were it not for the decision in Hixon v. Burson and the subsequent decisions of the Supreme Court.

It is strenuously urged by counsel for plaintiffs, however, that the logic of the recent decisions of the Supreme Court in the cases of Hixon v. Burson, supra, State ex rel. Attorney General v. Davis, 35 W. L. B., 387; Steinkamp v. The City of Cincinnati, 54 Ohio St.. 284; and Gaylord v. Hubbard, 37 W. L. B., 513, necessarily requires that this law shall also be pronounced unconstitutional.

The case of Hixon v Burson, concerned legislation relating to the construction of roads in certain counties; and the case of State ex rel. v. Davis. concerned legislation relating to the construction of certain county bridges which the court said were "but parts of highways."

In both of these cases, the laws under review were declared unconstitutional, upon the ground that the subject matters of the laws, viz:—county roads and bridges, were of a general nature, and that laws relating to them, as a general rule, should be of uniform application.

In the Steinkamp case, the Supreme Court held, that a law which required fire escapes in buildings of three or more stories in height, not used for private residences

exclusively, and located in cities of the first grade of the first class was unconstitutional, for the reason that it was not apparent why this law which was intended for the protection of life and limb should be confined in its operation only to cities of the first grade of first class.

The case of Gaylord v. Hubbard, involved the constitutionality of an act which related to the powers of the Board of Equalization in fixing the value of property which was to be the basis of taxation for state, county and municipal purposes. The court held that such a law must be uniform throughout the state.

Whether the logic of these decisions, carried to its natural result, would require that the law under consideration here, should be declared unconstitutional, is a question we are not at liberty to determine, for the reason that the Supreme Court has declared that by these decisions it did not intend to overrule its long line of previous decisions, upholding the classification of cities, not only with respect to their organization, but also with respect to the construction of streets and sewers therein.

In State ex rel. v. Baker, (35 W. L. B., 381,) the Supreme Court as late as June, 1896, on the ground of stare decisis, upheld the classification of cities for the purpose of legislation, and in the course of the opinion, declared that "what was said on the subject of the classification of cities in Hixon v. Burson, was not germain to the case considered. It was not concurred in by all the judges and by a rue of this court adopted in 1857, (6 Ohio St., note ) the concurrence of the judges in an opinion is limited to the part necessary to the decision and expressed in the syllabus."

Again, as late as June, 1896, the Supreme Court affirmed without report, (35 W. L. B., 399,) the decision of the Circuit Court for the second circuit in Siefert v. Weidner, (12 C. C. Rep., 1-18,) in which case, after a very careful and thorough examination of the authorities, the latter court declared constitutional the act of March 27th, 1895, (90 V. L. ., 37,) commonly known as the crematory law, and applicable only to cities of the second grade of the second class.

In the case of Hays & Sons v. The City of Cleveland, (35 W. L. B., 379,) decided in June, 1896, the Supreme Court upheld laws relating to the construction of sewers, and applicable only to cities of the second grade and first class. These laws may be found in 92 O. L., pages 559, 630, 644, 695 and 704, and the reported affirmance of the lower court, found in 35 W. L. B., 379 and 391.

But coming to the decisions in the Supreme Court, in cases arising in this city, we find the most convincing evidence that the Supreme Court will not regard this law as unconstitutional because it does not have an operation throughout the state.

The act of April 20th, 1893, (90 V. 267, Local Laws, )was an act which authorized cities of the first grade of the first class to improve turnpikes or avenues which have become city streets, and to provide for the payment of such improvements. The constitutionality of this law was upheld by our circuit court, and the decision affirmed by the Supreme Court without report. Other laws relating to this city and involving the same question of conflict with sec. 26, art. 2 of the constitution, and upheld by the Supreme Court, are found in 92 O. L., 605-606, and known as the Water Works Law—Ampt v. City of Cincinnati 12 C. C. Rep., 119, affirmed in 37 W. L, B., and the law extending the term of the mayor of the city of Cincinnati, (92 O. L., 43,) and sustained by the Supreme Court in 36 W. L. B.

Assuming this law not to be unconstitutional because it applies generally to cities of the first grade of the first class only, the next inquiry is, whether the fact that the legislature has provided that in the improvement of corner lots, the lot shall be assessed upon its full lengthwise side, or, in other words, upon the number of feet abutting instead of fronting upon the alley, renders the law invalid, or any part of the same invalid, or any of the assessments thereunder wholly or partially illegal.

Prior to the decision of the Supreme Court in Haviland v. City of Columbus, (50 Ohio St., 471,) it had been the custom in this city in making assessments for street improvements by the "front foot", as provided in sec. 2264 of the Rev. Stats., to regard the word "front" as synonymous with "abutting", and consequently to levy the assessment upon every foot of land abutting upon the improvement.

In the Haviland case, however, the Supreme Court held, that this construction of sec. 2264, was erroneous, and that the word "front' 'should have a narrower or a more literal construction; and that where a lot did not actually front on the improvement, but as in the case of many corner lots, lay lengthwise upon the improved street, it could not be assessed for the total number of feet abutting upon the improvement, but could only be assessed for such number of feet as it had fronting upon the street upon which it actually fronted.

This decision was afterwards approved and followed in Sandrock v. Columbus, (51 Ohio St., 317, ) and again by a divided court with vigorous dissenting opinions in City of Toledo v. Sheill, (53 Ohio St., 447.)

The officials of the city of Cincinnati, however, subsequently applied to the General Assembly to change the rule declared by the Supreme Court so far as it applied to cities of the first grade of the first class, and accordingly, on February 8th, 1894, (91 O. L. 24,) the General Assembly changed this rule so far as it applied to cities of the first grade of the first class, and provided that in such cities, the assessment should be by the "abutting feet" in place of the "front feet."

The provisions of this law were, on May 21, 1894, (91 O. 377,) also extended to cities of the third grade of the first class.

Whether the alley law by its own language provides for assessment by the abut-

ting feet, and not by the front feet, and therefore avoids any application to assessments made under it, of what is known as the Haviland decision, we need not consider, because if it does not, certainly the act of February 8th, 1894, has that effect. The question is therefore clearly presented—can the General Assembly provide, that in cities of the first grade and first class, a different mode of assessment may be adopted for corner lots, from that adopted in other municipalities of the state?

The decision of the Supreme Court, in June, 1896, in the case of The City of Cincinnati v. Conner, is adverse to the contention that the General Assembly cannot exercise such a power, and is conclusive in favor of the exercising of such power.

In that case, the contitutionality of sec. 2271 of the Rev. Stats., was sustained. The section reads as follows:

"In cities of the first grade of the first class, and in corporations in counties containing a city of the first grade of the first class, the tax assessment, especially levied or assessed upon any lot or land for any improvement, shall not, except as provided in sec 2272, exceed twenty-five per centum of the value of such lot or land after the improvement is made, and the costs exceeding that per centum shall be paid by the corporation out of its general revenue."

In disposing of the objection that this provision of the law was in contravention of sec. 26, act 2 of the constitution, because not uniform throughout the state, the court said:

"The further claim is made by the plaintiff in error, that sec. 2271 is unconstitutional, being, it is said, a law of a general nature not having uniform operation throughout the state, and therefore in contravention of sec. 26, act 2 of the constitution."

"That the power to construct sewers and levy assessments for their cost, may be appropriately conferred on municipal corporations is not questioned; and legislation applicable to classes of such corporations as they are designated in the statute under consideration, has been uniformly sustained by the decisions of this court, and so often, that we deem it unnecessary to enter upon the discussion of the question here. There is nothing in any recent decision of the court which is in conflict with the former adjudications on this question."

If it is a constitutional exercise of the legislative power to limit the right of assessment to twenty-five per cent. of the value of the property in cities of the first grade and first class only, it is equally within the constitution to provide a different mode of assessing corner lots, so far as street improvements are concerned, from that which is in force in other municipalities of the state.

Coming now to the last contention of plaintiffs, viz:—that no personal notice is provided for by the law, but only a notice by publication.

Without examining this law carefully, to determine whether it does not require a personal notice to the owner of the land abutting upon the alley, but assuming for the sake of this discussion that it does not, nevertheless, we are unable to say that such a feature of the law renders it unconstitutional. This same question was raised and determined by the Supreme Court in the case of Cupp v. Commissioners of Seneca county, (19 Ohio St., 163), in which a similar mode of giving notice by publication was provided by the law in the construction of ditches. In answer to the objection that such a mode of giving notice was inconsistent with the provision of the constitution that "private property shall ever be held inviolate," sec. 19, act 1, the Supreme Court said:

"Is this act in conflict with the consitutional provision referred to? That provision guarantees to the public' that the right to take the land, and to the owner the right to a compensation, to be paid or secured before the land is taken.

"One of these rights is just as sacred as the other, and neither is more sacred than any other form of right to land, or to compensation therefor. Nothing is better established at law, than that such rights may be affected and lost to the owner by a proceeding in rem, and upon merely constructive notice. The law of all such proceedings rests in the necessity of the case, and in no instance, perhaps, is that necessity more plainly apparent than in the construction of public roads and other improvements of like nature.

"Without the aid of such proceeding, the construction of roads and ditches would be next to impracticable. A similar proceeding is provided, and a like provision as to the waiver of claims is made, in the law for the establishment of roads. (S. & C., 1286, sec. 8.) Some such provision of law seems indispensable. The owner of land necessary to be used for a road or ditch, may be absent or unknown. The title may be in dispute. The legal title may be in one, and the equitable title in another. One may have the present estate and another the reversion or remainder. The owner may make a secret conveyance on purpose to evade the law. Without the power to proceed in some such form against the land itself, the right guaranteed to the public by this provision of the constitution, to take the land for public uses, would be of little avail. In the construction of such improvements of any considerable length, personal notice, if at all practicable, would be attended with great inconvenience and uncertainty. It was the duty of the legislature to provide some reasonable means for securing both, to the public and to the owner of land, these rights so guaranteed by the constitution. To require in such cases personal notice to the owners, would, in our judgment be quite as unreasonable, as to require that owners of lands should, as was said in the case of Miller v. Graham, (17 Ohio St., 1,) 'maintain some kind of an agency in the vicinity of the lands, through which they may be informed

of proceedings affecting them.' They are presumed to know of the existence of this act, and therefore to have notice that their lands are liable, at any time, upon four weeks' publication of notice to that effect, to be taken for the use of a ditch, and that their non-claim will be taken and held as a waiver of all right to compensation or damages. There is no greater hardship in this implied waiver, after notification beforehand, that silence will be taken for consent, than that there is in the analogous cases of creditors of a bankrupt or insolvent, or of claimants upon any fund in the hands of a court for distribution, whose failure to present their claims is made to work a forfeiture of the same. Nor is the necessity for such implication any the greater in the latter cases than in the former. A principal element in the determination by the commissioners, as to the expediency of constructing a road or ditch, is the amount of its cost, and that amount should, if practicable, be ascertained before the day fixed for the determination. The whole proceeding is substantially in rem. Jurisdiction over the person of the parties is not necessary. The act in question relates to and affects only the remedy, and not the rights of the parties, and is therefore within the general scope of legislative power. The constitutional provision referred to, does not take away that power. It defines and guarantees the right of the party to his land, or to a sure and adequate compensation therefor. The remedy—the proceeding by which that right is to be effected—is still left to legislative discretion. We fail therefore to see wherein the act in question violates the constitution."

The three grounds upon which the plaintiffs base their attack upon the constitutionality of this law having been found to be untenable, it follows that the law must be held unconstitutional, and that the cases brought to enjoin the assessments made under that law must be dismissed

Hunt, J. and Jackson, J. concur.

Peck & Shaffer, for plaintiffs.
Frederick Hertenstein, (Corporation Counsel) for defendant.